**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | | |
|---|---|---|
| **ERIC WEATHERS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **No. 2009-CV-5493** |
| **v.** | ) | |
| | ) | |
| **FEDEX CORPORATE SERVICES, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**DEFENDANT FEDEX CORPORATE SERVICES'
ANSWER TO AMENDED COMPLAINT**

---

COMES NOW the Defendant, FedEx Corporate Services, Inc., by and through its attorneys, and to the numbered Paragraphs of Plaintiff's Complaint ("Complaint"), submits its Answer as follows:

**Jurisdiction/Parties/Venue**

1.      This Court has jurisdiction over the parties to this dispute, all of whom are domiciled and operate within the state of Illinois.

**Answer:**      The Defendant admits that this Court has jurisdiction over the parties to this dispute, but denies the remaining allegations contained in Paragraph 1 of the Complaint.

2.      This Court has jurisdiction over the subject matter of this dispute, as the dispute concerns federal questions arising under Title VII of the Civil Rights Act of 1964, at 42 U.S.C. § 2000e, as amended *inter alia* by the Civil Rights Act of 1991.  These

questions are properly challenged pursuant to federal law, particularly 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f). This Court additionally has supplemental jurisdiction over the state claim lodged, under 28 U.S.C. § 1331.

**Answer:** The Defendant admits that the Plaintiff seeks to invoke this Court's jurisdiction under the statues cited in Paragraph 2 of the Complaint. Except as expressly admitted herein, the allegations set forth in Paragraph 2 of the Complaint, including specifically any inference that the Defendants have violated any of the listed statues, are denied.

3. Plaintiff resides in Barrington, Illinois (Lake County).

**Answer:** Upon information and belief, Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4. Defendant FedEx Corporate Services, Inc., is a Delaware corporation authorized by the State of Illinois to operate as a foreign corporation in Illinois, and is an employer within the meaning of the Civil Rights Act of 1991 and 42 U.S.C. § 2000, and has a location in Lake County, Illinois, at which Plaintiff worked at the time of the events in question.

**Answer:** Defendant admits the allegations contain in Paragraph 4 of the Complaint.

5. Venue is thus properly laid in this Court pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices alleged herein were committeed [*sic*] within the geographical jurisdiction of this Court.

**Answer:** Defendant admits that the venue is appropriate, if at all, with this Court as cited in Paragraph 5 of the Complaint.

6.     This Court has authority to grant the requested damages and other relief under 28 U.S.C. § 1331, § 1343(a) and 42 U.S.C. § 2000e-5(g).

**Answer:**     Defendant admits that this Court has the authority to grant damages and other relief but denies that Plaintiff is entitled to any damages or other relief.

## Facts

7.     Plaintiff Weathers began work for Defendant FedEx in 1988, as a package handler, later to be promoted to to [*sic*] such positions as courier, sales representative, and finally District Sales Manager.  As demonstrated by his personnel file, Weathers had no disciplinary issues during his nearly 20 year tenure with FedEx with the exception of a falsified letter of discipline dated February 14, 2008, placed in his file by company representatives (discussed below).

**Answer:**     Defendant admits that Plaintiff began employment with Defendant in 1988, and worked in various capacities during his tenure.  The remaining allegations set forth in Paragraph 7 of the Complaint are denied.

8.     In 2007, Weathers, a conservative evangelical Christian, at that time having ascended to the position of District Sales Manager (DSM), dared to *answer questions* regarding religious issues posed by another employee, *by simply referring to and quoting from the Bible.*

**Answer:**     Defendant admits that Weathers was a District Sales Manager in 2007.  Defendant is without sufficient information to permit it to admit or deny the remaining allegations contained in Paragraph 8 of the Complaint.

9.      While the employee had specifically solicited a religious response from Plaintiff, the employee nevertheless took offense to the Bible passages referred to by Weathers-the employee's Christian beliefs being evidently less conservative than those of Weathers-and then the employee "shot the messenger" by filing an internal complaint against Weathers with FedEx.

**Answer:**      Defendant admits Plaintiff was named in an internal complaint but denies the remaining allegations contained in Paragraph 9.

10.      A "Counseling Letter" given to Weathers by FedEx on October 15, 2007, informed him that there was an investigation involving his religious speech and, while there were no findings that he had violated policy, the letter stated, "Although religious conversations may have been initiated by others, these conversations must cease."  No policy was cited in the letter.

**Answer:**      Defendant admits that a "Letter of Counseling" was given to Plaintiff on October 15, 2007 but denies the remaining allegations contained in Paragraph 10 and states that the document speaks for itself.

11.      Weathers sent multiple Civil Rights Accommodation Requests to his supervisor, Director Kim [*sic*] Kyker, and Human Resources, but never received a reply.

**Answer:**      Defendant denies the allegations of Paragraph 11 of the Complaint.

12.      In his religious accommodation requests Weathers asked the company where and when he and other employees could answer questions posed by FedEx co-workers about faith, and cited the Biblical command to Christians to be "always ready to give an answer for the hope that lies within" him (1 Peter 3:15).

**Answer:**      Defendant denies the allegations of Paragraph 12 of the Complaint.

13.     Swiftly following Weathers's accommodation requests, his Director, Kym Kyker, engaged in a series of retaliatory acts, which ultimately culminated in his constructive discharge from the company.

**Answer:**     Defendant denies the allegations of Paragraph 13 of the Complaint.

14.     Prior to his accommodation requests, Weathers enjoyed what Kyker even referred to as a "stellar career" with the corporation, but then after his accommodation requests, he was placed under intense and disparate scrutiny by Kyker who counseled Weathers to leave his position on several occasions before eventually demoting him to a position he had held 18 years prior (sales representative), in a distressed sales territory, under a peer manager that reported to the abusive Kyker.

**Answer:**     Defendant denies the allegations of Paragraph 14 of the Complaint.

15.     FedEx violated Weathers' rights by ignoring his religious accommodation requests, and retaliated against him, forcing him to quit so its illegal activity would go undiscovered.

**Answer:**     Defendant denies the allegations contained in Paragraph 15 of the Complaint.

16.     Believing in the relief outlined in company policy, Weathers contacted FedEx Human Resources (HR) to remedy the retaliation that followed Kyker's discrimination.  Weathers soon realized that HR was unresponsive to his complaints and believed that his termination was inevitable.

**Answer:**     Defendant denies the allegations in Paragraph 16 of the Complaint.

17.     Before lodging his complaint with HR, Weathers asked Kyker what constituted religious discussion and inquired about what he should say if someone asked about his college degree.

**Answer:**     Defendant denies the allegations in Paragraph 17 of the Complaint.

18.     Even though Weathers holds a Bible degree, in response to his query Kyker instructed him to state that his degree is in "theology" and to abruptly end the discussion.

**Answer:**     Defendant denies the allegations in Paragraph 18 of the Complaint.

19.     Unable to find any prohibitions against religious and political speech in FedEx policy, Weathers contacted human resources (HR) for clarification, and was told that such speech is forbidden.

**Answer:**     Defendant denies the allegations in Paragraph 19 of the Complaint.

20.     Weathers was told that his answering an interested employee's questions about the Bible was categorized with such violations of company policy as theft, illegal use of drugs, physical violence, sexual harassment, and falsification of records.  When he asked for a more specific reference to how answering an employee's religious question with a religious answer violates FedEx policy, the HR Representative, Jim Wallace, replied, "Acts detrimental to the company for one."

**Answer:**     Defendant denies the allegations contained in Paragraph 20 of the Complaint.

21.     Two weeks after warning Weathers to cease all religious discussion and issuing him a disciplinary letter, his supervisor, Kyker, sent Weathers a blasphemous e-mail stating:  "The man upstairs is watching…" The e-mail included a picture of a Baptist

church marquee that stated:  "GOD HAS SEEN YOUR CBT [business report] NUMBERS.  YOU'RE GOING TO HELL!"

**Answer:**        Defendant admits that an email was sent to all "Big Ten Managers" regarding CBT status with an attachment.  Except as expressly admitted herein, the remaining allegations set forth in Paragraph 21 of the Complaint are denied.

22.        The adverse conduct continued when Kyker baited Weathers into a religious discussion in the presence of peers.  She singled out Weathers, imploring him to answer the question:  "What is an atheist?"

**Answer:**        Defendant denies the allegations contained in Paragraph 22 of the Complaint.

23.        Uncomfortable with her question, in light of her stern reprimand and disciplinary letter telling him to cease from any and all religious discussions, Weathers asked her if she wanted him to answer the question.  She said "yes," which made him feel not a little uncomfortable-unsure of her motives and the future implications for his answer.  He was reasonably worried that he would receive further discipline for even engaging in religious discussion (even though such would have been at the order of his supervisor-his fear was based on her previous contradicting command NOT to engage in any religious discussion), but was nevertheless told by the supervisor, Kyker, to answer her religious question.

**Answer:**        Defendant denies the allegations contained in Paragraph 23 of the Complaint.

24.     Weathers was confused by Kyker's duplicity and became anxious that he would receive further discipline whether he responded to or abruptly ended such conversations.

**Answer:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint and, accordingly they are denied.

25.     Weathers also became gravely concerned that someone could engage him in a discussion based on the corporation's "Your Diversity and Inclusion" Brochure which celebrates explicit religious practices.

**Answer:**     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint and, accordingly they are denied.

26.     Performance had never been an issue for Weathers, a multiple top award winning sales professional, until after he sought religious accommodation from FedEx, whose cessation-of-all-religious-discussion order, directed only at him, a conservative evangelical Christian, violated his Title VII rights.

**Answer:**     Defendant denies the allegations contained in Paragraph 26 of the Complaint.

27.     While Kyker admitted that Weathers had a "stellar 19-year career" with the company, she chose to call for Weather's resignation after a commonplace e-mail mistake.

**Answer:**     Defendant denies the allegations of Paragraph 27 of the Complaint.

28.     After being directed to send a personnel report to Kyker's Administrative Assistant, Weathers accidentally sent the e-mail to his work group when the "To" field was erroneously auto-populated.  Weathers immediately notified the Managing Director who arranged a meeting with the Vice President (VP).

**Answer:**     Defendant admits that Plaintiff sent a confidential personnel report via email to his work group.  Defendant denies the remaining allegations contained in Paragraph 28.

29.     The VP claimed "in my eight years with the company, I have never seen such a mistake" and along with the Managing Director, determined that Weathers could not recover from the action despite the fact that FedEx ran television ads citing that 12% of employees erroneously send emails to the wrong people.

**Answer:**     Defendant denies the allegations in Paragraph 29 of the Complaint.

30.     The VP and Kyker then engaged Weathers in a vague discussion suggesting that he voluntarily leave his position.  The VP should have remembered a similar "accidental transmission" in which a fellow manager in the same division avoided discipline and received his Director's support to overcome the same mistake and flourish in his career.  In stark contrast to that "accidental transmission" situation, Weathers was subjected to a string of adverse abuses by Kyker who:  1) issued him a Warning Letter which did not reference any policy violations, 2)  told him to transfer, 3) told him to take a position elsewhere in the company or quit, and 4) demoted him.

**Answer:**     Defendant denies the allegations in Paragraph 30 of the Complaint.

31.     Kyker took these adverse employment actions as a means of exploiting Weathers's mistake to hide FedEx's discrimination and retaliation against him.  As noted

above, similarly situated employees who are not conservative evangelical Christians who verbalize their faith are not treated adversely as was Weathers.

> **Answer:**    Defendant denies the allegations in Paragraph 31 of the Complaint.

32.    The issuance of the Warning Letter did not follow the company's Progressive Discipline Policy and its own adherence to Just Cause Standards as taught in its Management Practices and the Law classes conducted by the company's Senior Counsel.

> **Answer:**    Defendant denies the allegations in Paragraph 32 of the Complaint.

33.    The Managing Director tried using Weathers's innocent mistake to prod his resignation by falsely claiming that he would be held personally liable in a lawsuit that could potentially be filed by a subject of his e-mail.

> **Answer:**    Defendant denies the allegations in Paragraph 33 of the Complaint.

34.    Kyker informed Weathers that he should take a position in a sales division where he worked prior to his most recent promotion, and became increasingly agitated when he seemed reluctant to quickly relocate to the most expensive regions in the country.

> **Answer:**    Defendant denies the allegations in Paragraph 34 of the Complaint.

35.    One Friday afternoon in early 2008, Kyker requested Weathers to meet on the following Tuesday to discuss his business plan.  That Tuesday she called him into her office to announce, with no explanation, that he was demoted to a job he held 18 years prior, a demotion which carried with it substantial financial loss for Weathers (not to mention the effect on his resume).

**Answer:** Defendant admits that Plaintiff was demoted to Senior Account Executive. Except as expressly admitted herein, the remaining allegations set forth in Paragraph 35 of the Complaint are denied.

36. With the Letter of Warning in his file, and the demotion, Weathers's opportunity to obtain a different position in the company commensurate with his experience and skill was severely compromised; he feared the retaliation that would have its final effect.

**Answer:** Defendant denies the allegations contained in Paragraph 36.

37. Despite his attempts to do right by his corporation, the aloofness of Human Resources and his Vice President in light of Kyker's unchecked acts of retaliation caused Weathers to despair that his career could swiftly succumb to the continued assaults and place his family in both financial and emotional turmoil. After a final, unsuccessful attempt to seek answers, protection, and guidance from Human Resources, Weathers felt he had no choice but to resign from the company. He filed a timely complaint with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, which issued Weathers a Right to Sue letter in August 2009.

**Answer**: Defendant admits Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. Defendant denies the remaining allegations contained in Paragraph 37 of the Complaint.

## Count I:  Harassment/Hostile Work Environment

38. Plaintiff hereby realleges all previous paragraphs and incorporates them herewith by reference as if fully alleged in Count II.

**Answer:** Defendant incorporates its responses to Paragraphs 1-37 of the Complaint as though fully set forth herein.

39. Defendant conducted a campaign of harassment against Plaintiff related to and because of his religion which is Christian, particularly a more conservative stripe of evangelical Christianity, which takes the Bible as inspired by God, infallible, and inerrant, and necessary and sufficient as an authority over all of life and faith.

**Answer:** Defendant denies the allegations of Paragraph 39 of the Complaint.

40. FedEx's acts pursuant to this campaign of harassment include:

a. A supervisor forbidding Plaintiff from engaging in any conversations regarding his religion, even those initiated by others, on August 24, 2007 and October 15, 2007;

b. Supervisors and Human Resources ignoring multiple requests for religious accommodation made by Plaintiff, and informing Plaintiff that they lost records vital to their investigation of his internal complaints of adverse treatment, on March 21, 2008, and failing to resolve said issues;

c. Supervisors placing (falsified) reprimands (dated February 14, 2008) and warning letters in Plaintiff's personnel file without cause, such letters failing to state company policy or document performance trends, on October 15, 2007 and February 19, 2008, and then demoting Plaintiff on March 3, 2008;

d. Supervisors making comments on several occasions (January 14, 2008, January 23, 2008, and January 28, 2008) to Plaintiff without justification,

that he should leave the company or he might be sued, and that he should transfer to other positions;

e.   After forbidding Plaintiff from discussing religion, the same supervisor baiting him (on our about December 6, 2007) by asking questions of Plaintiff about religious matters and demanding him to respond;

f.   After forbidding Plaintiff from discussing religious matters, supervisors refusing to clarify guidelines on what would be acceptable discussion and exhibiting hostility toward Plaintiff for asking such clarification (on October 15 (the day Kyker refused to clarify guidelines and exhibited hostility toward Plaintiff); 16 (the date Plaintiff sought clarification from Jim Wallace in HR and was told that religious speech is "acts detrimental to the company"), 18 (the day Plaintiff emailed the accommodation request to Kyker and Wallace, and the day he hand delivered the letter, as instructed by Kyker, to her administrative assistent [*sic*] Jenn Muro), 2007, and November 16, 2007 (the day Plaintiff followed up with Jim Wallace regarding the status of his accommodation request, and Wallace responded by sending Plaintiff back to his abuser, Kyker));

g.   A human resources person telling Plaintiff on October 16, 2008 that religious speech in the workplace was an "act detrimental to the company" of the same magnitude as theft, illegal use of drugs, physical violence, sexual harassment, and falsification of records;

h.   A supervisor sending Plaintiff a harassing religious email featuring a picture of a Baptist Church sign referring to his work performance issues

and expressing the religious damnation, "You're going to hell!" on November 2, 2007.

i.    The adverse actions listed above followed Defendant's becoming aware of Plaintiff's religion within such a period of time as to raise an inference of an intent to harass Plaintiff because of his religion.

j.    The adverse actions listed above constitute an ongoing course of harassment creating a hostile work environment for Plaintiff.

k.    Similarly situated FedEx employees, including Plaintiff's supervisor, whose religion is different than Plaintiff's, have not been subjected to such severe and pervasive harassment and hostile work conditions in response to their religious expressions in the FedEx workplace.

**Answer:**    Defendant denies the allegations set forth in Paragraph 40 of the Complaint, including subparts (a) – (k).

41.    As a result of and commensurate with Defendant's campaign of religious harassment, and creation of a religiously hostile work environment, Plaintiff has suffered demotion, the loss of his job (see below), and emotional distress and anguish.

**Answer:**    Defendant denies the allegations of Paragraph 41 of the Complaint and further denies that Plaintiff is entitled to any of the relief sought therein or elsewhere in the Complaint or to any relief whatsoever from Defendant.

### Count II:  Constructive Discharge-Religious Discrimination

42.    Plaintiff hereby realleges all previous paragraphs and incorporates them herewith by reference as if fully alleged in Count II.

**Answer:** Defendant incorporates its responses to Paragraphs 1-41 of the Complaint as though fully set forth herein.

43. The above listed acts of discriminatory harassment were sufficiently severe and pervasive to make Plaintiff's working conditions so intolerable that he was forced to involuntarily resign.

**Answer:** Defendant admits that Plaintiff resigned from his employment with Defendant. Defendant denies all other allegations contained in Paragraph 43.

44. Said involuntary resignation constitutes a constructive discharge.

**Answer:** Defendant denies the allegations contained in Paragraph 44 of the Complaint.

45. Similarly situated employees whose religious beliefs are different than Plaintiff's have not been subject to such severe and pervasive and intolerable discriminatory harassment, warranting involuntary resignation or constructive discharge.

**Answer:** With regard to the allegations contained in Paragraph 45 of the Complaint, Defendant denies that any employees, including Plaintiff, have been subject to "severe and pervasive and intolerable discriminatory harassment, warranting involuntary resignation or constructive discharge." Defendant further denies all remaining allegations contained in Paragraph 45 of the Complaint.

46. As a result of Defendant's constructive discharge borne of religious discrimination, Plaintiff has suffered emotional distress and anguish.

**Answer:** Defendant denies the allegations contained in Paragraph 46 of the Complaint.

## Count III: Failure to Accommodate

47. Plaintiff hereby realleges all previous paragraphs and incorporates them herewith by reference as if fully alleged in Count III.

**Answer:** Defendant incorporates its responses to Paragraphs 1-46 of the Complaint as though fully set forth herein.

48. Defendant never responded to Plaintiff's requests for religious accommodation, in which he requested to be allowed to express his faith in the event that he received questions regarding the same.

**Answer:** Defendant denies the allegations in Paragraph 48 of the Complaint.

49. Indeed, Plaintiff's request for religious accommodation was removed from his personnel file.

**Answer:** Defendant denies the allegations in Paragraph 49 of the Complaint.

50. Similarly situated employees whose religious beliefs are different than Plaintiff's have not been subject to the persistent refusal [*sic*] to accommodate that befell Plaintiff.

**Answer:** Defendant denies that any employee, including Plaintiff, has been "subject to the persistent refusal [sic] to accommodate that befell Plaintiff" and further denies that any similarly situated employee receive more favorable treatment than Plaintiff.

51. As a result of and commensurate with Defendant's failure to accommodate, Plaintiff has suffered demotion, the loss of his job, and emotional distress and anguish.

**Answer:** Defendant denies the allegations in Paragraph 51 of the Complaint.

## Count IV:  Retaliation

52.     Plaintiff hereby realleges all previous paragraphs and incorporates them herewith by reference as if fully alleged in Count IV.

**Answer:**     Defendant incorporates its responses to Paragraphs 1-51 of the Complaint as though fully set forth herein.

53.     Defendant retaliated against Plaintiff for daring to request a religious accommodation, namely, to be allowed to discuss his faith as FedEx brochures and common practice reveal other employees with religious beliefs different than Plaintiff's are allowed to do so.

**Answer:**     Defendant denies the allegations in Paragraph 53 of the Complaint.

54.     Defendant retaliated by 1) harassing Plaintiff because of his religious beliefs and expression, 2) baiting Plaintiff into damned-if-you-do-damned-if-you-don't situations where he was forced to face the choice of violating his supervisor's edict to cease all religious discussion vs. violating his supervisor's demand to answer religious questions, 3) giving Plaintiff unwarranted written reprimands due to his religious beliefs, and 4) demoting Plaintiff to a position he had held almost 20 years earlier, which carried with it a substantial financial loss.

**Answer:**     Defendant denies the allegations in Paragraph 54 of the Complaint.

55.     Similarly situated employees whose religious beliefs are different than Plaintiff's have not been subject to the persistent retaliation that befell Plaintiff.

**Answer:**     Defendant denies that any employees, including Plaintiff, have been "subject to [] persistent retaliation." Defendant further denies all remaining allegations contained in Paragraph 55 of the Complaint.

56.     As a result of and commensurate with Defendant's retaliation, Plaintiff has suffered demotion, the loss of his job, and emotional distress and anguish.

**Answer:**     Defendant denies the allegations in Paragraph 56 of the Complaint.

## Count V:  Religious Discrimination

57.     Plaintiff hereby realleges all previous paragraphs and incorporates them herewith by reference as if fully alleged in Count V.

Answer:     Defendant incorporates its responses to Paragraphs 1-56 of the Complaint as though fully set forth herein.

58.     Defendant's actions against Plaintiff constitute discrimination against him solely on the basis of his religious-namely, conservative evangelical Christian-beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e.

**Answer:**     Defendant denies the allegations in Paragraph 58 of the Complaint.

59.     Defendant acted maliciously against Plaintiff, treating him as described above out of abject hostility to his conservative evangelical Christian beliefs.

**Answer:**     Defendant denies the allegations in Paragraph 59 of the Complaint.

60.     Similarly situated employees whose religious beliefs are different than Plaintiff's have not been subject to the unlawful, malicious, egregious discriminatory treatment that Defendant visited upon Plaintiff.

**Answer:**     Defendant denies that any employees, including Plaintiff, have been subject to "unlawful, malicious, egregious discriminatory treatment."  Defendant further denies all remaining allegations contained in Paragraph 60 of the Complaint.

61.    As a result of and commensurate with Defendant's religiously-motivated discrimination, Plaintiff has suffered demotion, the loss of his job, and additionally, emotional distress and anguish.

**Answer:**    Defendant denies the allegations of Paragraph 61 of the Complaint and further denies that Plaintiff is entitled to any of the relief sought therein or elsewhere in the Complaint or to any relief whatsoever from Defendant.

<u>**Count IV:  Intentional Infliction of Emotional Distress**</u>

62.    Plaintiff hereby realleges all previous paragraphs and incorporates them herewith by reference as if fully alleged in Count VI.

**Answer:**    Defendant incorporates its responses to Paragraphs 1-61 of the Complaint as though fully set forth herein.

63.    The above described actions, made by Defendant by and through its previously named agents, all were made intentionally, deliberately, willfully, and wantonly with malice, constituting extreme and outrageous conduct, in that the actions were calculated to lead to the demotion and termination of Plaintiff Weathers, and to his and great emotional distress and anguish, all because Defendant harbored abject hostility toward his conservative evangelical Christian faith.

**Answer:**    Defendant denies the allegations in Paragraph 63 of the Complaint.

64.    Defendant's above-described actions directly and proximately caused Plaintiff to suffer great and severe emotional distress, fearing the loss of his job and future career prospects, and fearing financial run upon his family.

**Answer:** Defendant denies the allegations of Paragraph 64 of the Complaint and further denies that Plaintiff is entitled to any of the relief sought therein or elsewhere in the Complaint or to any relief whatsoever from Defendant.

65. Defendant's aforesaid intentional, deliberate, willful, malicious, retaliatory, extreme and outrageous conduct was calculated to cause Plaintiff severe emotional distress and further, Defendant knew or should have known that said conduct would cause Plaintiffs severe emotional distress.

**Answer:** Defendant denies the allegations of Paragraph 65 of the Complaint and further denies that Plaintiff is entitled to any of the relief sought therein or elsewhere in the Complaint or to any relief whatsoever from Defendant.

Wherefore, premises considered, Plaintiff requests that this Court grant judgment against the Defendant, and award him the following relief:

A. Front pay and back pay from the date of Plaintiff's demotion and constructive discharge in an amount commensurate with his earnings and earning potential as a District Sales Manager;

B. Preliminary and permanent injunctive relief, in the form of a prohibition imposed upon Defendant from engaging in any further acts of religious discrimination, retaliation, failure to accommodate religious beliefs, and/or creation of hostile work environments, directed at conservative evangelical Christians or any other religious group disfavored at FedEx;

C. Compensatory damages other than back and front pay, for Plaintiff's emotional distress and anguish;

D.      Punitive damages for its willful, wanton, intentional, malicious, egregious behavior animated by it abject hostility to Plaintiff's conservative evangelical Christian beliefs;

E.      Costs and attorney's fees, pursuant to the Civil Rights Act of 1991; and

F.      Any and all further relief this Court deems just and equitable.

**Answer:**      Defendant denies it is liable to Plaintiff for any damages, including attorneys' fees, paralegal fees, or any other costs incurred in this action.  Defendant further denies that Plaintiff is entitled to any of the relief sought in his Prayer for Relief, including subparts (A) through (F), or elsewhere in the Complaint or to any other relief whatsoever from this Defendant.

All allegations contained in the Complaint that were not expressly admitted or denied in Defendant's numbered responses contained in this Answer are hereby denied in their entirety.

## AFFIRMATIVE DEFENSES

1.      Plaintiff has failed, in whole or in part, to state a claim upon which relief can be granted against FedEx.

2.      Defendant avers that some or all of this action and the remedies sought are barred by Plaintiff's failure to comply with all conditions precedent to the commencement of this action.

3.      Defendant avers that some or all of Plaintiff's claims are barred by the applicable statute of limitations.

4.      Defendant avers that some or all of Plaintiff's claims are barred by a 6-month contractual limitations period.

5.     Defendant avers that any claims for emotional and/or personal injury do not state a cause of action or claim upon which relief can be granted to the extent that they are barred by the exclusive remedy provision of the Illinois Workers' Compensation Act.

6.     To the extent Plaintiff has suffered any damage or injury, which is denied, upon information and belief, plaintiff has failed to mitigate his damages and, therefore, his claims for relief are barred.

7.     Plaintiff's damages, if any, should be offset by any subsequent earnings or benefits and by any damages caused by Plaintiff to Defendant.

8.     Defendant avers that its actions with respect to Plaintiff were made in good faith and based upon valid business reasons not related to any impermissible factor.

9.     Defendant avers that Plaintiff's religion and/or protected activity, if any, were not significant, substantial or determinative factors in any decision made concerning Plaintiff's employment.

10.     Without admitting any of the allegations contained in the Complaint, Defendant avers that even if Plaintiff's religion, alleged protected activity, or other impermissible factor were considered in any acts or decisions of Defendant, it would have made the same decisions and/or taken the same actions but for the consideration of his religion or other impermissible factor.

11.     Defendant avers that if any of the allegations of unlawful conduct contained in the Complaint are found to have merit, its actions were neither the cause nor the proximate cause of Plaintiff's injuries.

12.     Defendant avers that to the extent Plaintiff's alleged injury and/or damage was caused or contributed to by Plaintiff's own conduct, including but not limited to, carelessness, recklessness, assumption of risk, consent, comparative negligence, qualified privilege, and/or breach of covenants and conditions on his part to be performed, Plaintiff's recovery of damages from Defendant for said injury and/or damages is thereby barred or reduced.

13.     Because of Defendant's good faith efforts to comply with employment discrimination laws, its promulgation and maintenance of policies and procedures designed to prevent and correct any alleged discrimination, harassment or retaliation in the workplace, Plaintiff cannot recover punitive damages based on allegations of discrimination, harassment, or retaliation by managerial employees of Defendant.

14.     Plaintiff unreasonably failed to complain about alleged harassment and/or discrimination and further unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendant, or to avoid harm otherwise.

15.     The alleged conduct was not sufficiently severe and pervasive to create a hostile work environment.

16.     Plaintiff's claims for punitive damages are barred, in whole or in part, by the provisions of the United States Constitution, and other applicable statutes and decisional law.

17.     Without admitting any of the allegations contained in the Complaint, Defendant avers that any back pay liability it might otherwise have is eliminated and/or limited by after-acquired evidence of wrongdoing by Plaintiff which would have

precluded Plaintiff's hire and/or required his termination by Defendant had it been previously known to Defendant.

18.     Plaintiff is not entitled to recover attorneys' fees under applicable law.

19.     Defendant cannot be held liable for the actions of its employees which it neither authorized nor ratified or which were otherwise outside the scope of their employment.

20.     Defendant avers that this action is frivolous, unreasonable and groundless and, accordingly, Defendant is entitled to recover its attorneys' fees and other costs associated with defense of this action.

21.     Defendant reserves the right to assert further affirmative defenses as they become evident through discovery or investigation.

**WHEREFORE**, having fully answered, Defendant prays that this Court enter judgment in its favor, and award it is costs, including reasonable attorney fees, and other relief as may be just and proper.

Dated this 18th day of May, 2010.

Respectfully submitted,

*/s/ M. Kimberly Hodges*
M. Kimberly Hodges (BPR# 020809)
Senior Attorney
Federal Express Corporation – Legal Dept.
3620 Hacks Cross Road
Building B. 3rd Floor
Memphis, Tennessee 38125
(901) 434-8217 - Direct line
(901) 434-9279 - Facsimile

COUNSEL FOR DEFENDANT
FEDEX CORPORATE SERVICES, INC.

## <u>CERTIFICATE OF SERVICE</u>

This certifies that a copy of the foregoing has been served upon the following party via ECF notification, this 18th day of May, 2010:

Jason R. Craddock
Attorney at Law
227 W. Maple, Suite C
New Lenox, Illinois 60412

*/s/M. Kimberly Hodges*